AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Western District of Arkansas

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) Case No. 6:20 cm 28 |
| IN RE THE SEARCH OF INFORMATION ASSOCIATED WITH FACEBOOK USER NAME / PROFILE: sinoda.bloodstone (USER ID: 108594634284871) | ) ) ) |

FILED
US DISTRICT COURT
WESTERN DISTRICT
OF ARKANSAS

Sep 30, 2020

OFFICE OF THE CLERK

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Certain information associated with FaceBook User Name / Profile: sinoda.bloodstone (User ID: 108594634284871), further described in Attachment A.

located in the _____Western_____ District of _____Arkansas_____ , there is now concealed *(identify the person or describe the property to be seized)*:

Described in Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 922 | - Possession of a Firearm by a Prohibited Person |

The application is based on these facts:

See attached Affidavit in Support of An Application for Search Warrant

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_/s/ Mia Prince (telephonically)_
*Applicant's signature*

SA Mia Prince, USDA Forest Service
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _September 30, 2020_

City and state: Hot Springs, AR

United States Magistrate Judge Barry A. Bryant
*Printed name and title*

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

IN THE MATTER OF THE SEARCH
OF INFORMATION STORED AT
PREMISES CONTROLLED BY
FACEBOOK INC. AND WHICH IS
ASSOCIATED WITH FACEBOOK
**USER NAME / PROFILE NAME:**
**sinoda.bloodstone (USER ID:**
**108594634284871)**

Case No.   6:20 cm 28

**Filed Under Seal**

## AFFIDAVIT IN SUPPORT OF AN
## APPLICATION FOR A SEARCH WARRANT

I, Mia T. PRINCE, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.     I make this affidavit in support of an application for a search warrant for
information associated with a certain Facebook user ID and group ID that is stored at
premises owned, maintained, controlled, or operated by Facebook, a social networking
company headquartered in Menlo Park, California.  The information to be searched is
described in the following paragraphs and in Attachment A.  This affidavit is made in
support of an application for a search warrant under 18 U.S.C §§ 2703(a), 2703 (b)(1)(A)
and 2703(c)(1)(A) to require Facebook to disclose to the government records and other
information in its possession, pertaining to the subscriber or customer associated with the
user ID.

2.     Your affiant is a Special Agent (SA) with the USDA Forest Service.  SA
PRINCE has been a sworn law enforcement officer since approximately July of 2002 and
is currently assigned as a Special Agent on the Ouachita Forest in ARKANSAS.  SA

PRINCE'S current duties include conducting criminal, civil, and administrative investigations concerning the National Forests in Arkansas within the Eastern and Western Districts of Arkansas. During SA PRINCE'S career, she has participated in and has conducted arrests for all types of felony and misdemeanor matters and SA PRINCE has conducted seizures of property and records associated with many types of illegal activity affecting federal and state properties.  SA PRINCE'S current position with the United States Forest Service requires that she detect criminal activity, conduct surveillance, execute search warrants, interview suspects, arrest suspects, process and collect evidence, and link any evidence to suspect(s).

    3.    SA PRINCE has received classroom instruction during her law enforcement career on all types of illegal activities affecting federal and state lands. In May of 2002, SA PRINCE earned a Bachelor of Science degree in Criminal Justice from Northern Arizona University. In July of 2002, SA PRINCE graduated from the Natural Resource Police Training (NRPT) at the Federal Law Enforcement Training Center (FLETC) in Glynco, GA. Upon graduating from NRP, SA PRINCE worked as a sworn federal law enforcement officer until 2011.  In 2011 SA PRINCE earned a master's degree in Emergency Management from Arkansas Tech University.  SA PRINCE was also promoted to Criminal Investigator and graduated from the Criminal Investigator Training Program (CITP) from FLETC.  SA PRINCE has worked as the Special Agent for the Forest Service from 2011 till this present date.  During her career as a Federal Law Enforcement Officer and Special Agent, SA PRINCE has received advanced training in other areas of law enforcement to include but not limited to:  Investigation of Complex Archeological Resources Crimes, Drug Enforcement Training Program (DETP), Wildland Fire Origin and Cause

Determination, Archeological Resource Crimes, Reid Technique of Interviewing and Interrogation Advanced Training, and Outdoor Cannabis Investigations/Spotter School, and etc.

4.     SA PRINCE has been involved in the application and execution of numerous types of search warrants.  SA PRINCE is responsible for conducting investigations assigned to her involving all felony and serious misdemeanor cases investigated by the USDA Forest Service within her geographical area of responsibility. SA PRINCE has assisted in executing and been present on many State and Federal Search Warrants.  SA PRINCE has conducted and participated in the search of private residences which resulted in the seizure of stolen property, tools used in the commission of the crime, records/receipts of stolen property, financial documents, weapons used in the commission of the crime, photographs, video tapes, computer records and cellular phones seized as evidence of the crime, maps of the area in question, as well vehicles used by suspects in the commission of the crime(s).

5.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other officers/agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 18, United States Code, Section 922(g) have been committed by unknown persons.  There is also probable cause to search the information described in Attachment A for evidence of these crimes and the contraband or fruits of these crimes as described in Attachment B.

## FACTS ESTABLISHING PROBABLE CAUSE

7.     On September 12, 2020 at approximately 1400 hours, a white Chevrolet Malibu Sedan, occupied by a male driver later identified as Joshua ANDERSON (D.O.B. 10/22/19790 and a female passenger, later identified as Mandy MIZE (D.O.B. 4/01/1985) pulled up beside United States Forest Service (USFS) Law Enforcement Officer (LEO) Joe LILES and USFS LEO Paul JOLIVETTE'S marked patrol law enforcement unit on Forest Service Road (FSR) 43 on the Ouachita National Forest.   When the Malibu stopped, ANDERSON asked LEO LILES if there were any swimming holes in the area. During this conversation with the driver, LEO LILES, based on his law enforcement training and experience, recognized the odor of marijuana coming from inside the vehicle.   LEO LILES asked ANDERSON, if he had a valid driver's license in which he answered, "No".   LEO LILES asked ANDERSON if there was any marijuana in his vehicle.   ANDERSON openly admitted to LEO LILES that he had a pipe and marijuana.

8.     LEO LILES then directed ANDERSON to pull the car off to the side of the road and was asked to exit the vehicle.   While exiting the vehicle, LEO LILES observed that ANDERSON had an empty tan firearm holster with the name "Cutter" written on it on a belt located on his right hip.   ANDERSON was asked if he had any weapons on his person, and he stated he did not have a gun on him but did have one on him earlier that morning. ANDERSON gave LEO LILES verbal consent to search his person. LEO LILES advised ANDERSON he was not under arrest and began searching ANDERSON for any firearms on his person for officer safety and contraband.   During this search, ANDERSON openly admitted he was a convicted felon, and there were three (3) firearms inside the

vehicle.  ANDERSON began to tell LEO LILES where the weapons were in the vehicle. At this time LEO LILES placed handcuffs on ANDERSON and ANDERSON was placed at the front on the vehicle.  ANDERSON confirmed the vehicle belonged to him and gave consent for LEO LILES to search the vehicle. LEO LILES also noted the tags on the vehicle were also expired and ANDERSON acknowledged he was operating the vehicle with expired tags.

9.   On September 12, 2020, upon completion of the search of ANDERSON'S vehicle, three (3) handguns were found in the car.  One loaded handgun  Model-SCCY/CPX-1, 9MM Pistol, Serial Number 712336 with four (4) round of ammo was located between the driver's seat and the center console, a second loaded revolver Model-Heritage Rough Rider Frontier, .22LR Revolver, Serial Number Z23729 with six (6) rounds of ammo was found in the rear mesh backing of the driver's seat, and a third loaded handgun Model-Phoenix Arms Raven, .25 Auto, Serial Number 3140556 with five (5) rounds of ammo was found between the passenger seat and the center console.  LEO LILES also located a glass smoking device with suspected marijuana residue near the gear shift of the vehicle and two (2) clear baggies of suspected marijuana in the center console.

10.   On September 12, 2020, LEO JOLIVETTE confirmed with Montgomery County Sheriff's Office (MCSO) dispatch that ANDERSON was a convicted felon and ANDERSON was placed under arrest for Felon in Possession of a Firearm, Possession of Marijuana, and Possession of an Instrument of a Crime. ANDERSON was transported by to the Montgomery County Sheriff's Office in Mt. Ida, Arkansas.

11.   On September 17,2020, USFS Special Agent (SA) Mia T. PRINCE while conducting  further  investigation  associated  with  the  case  conducted  a  search  for

ANDERSON'S profile on Facebook. SA PRINCE located a Facebook page for ANDERSON under the name "Sinoda Bloodstone (Josh)". The profile picture for the page was one of ANDERSON.

12.    According to the Facebook Law Enforcement Guidelines, Facebook IDs are intrinsic in their URLs. As such, if you have a subject's profile page URL, you can find the ID by looking for the string "id" in the URL and passing along the number immediately following. For instance, the user ID for the following profile is "29445421": http://www.facebook.com/profile.php?id=29445421. As such, Group IDs follow a similar pattern, but the string to look for is "gid". For example, the group ID of the following URL (http://www.facebook.com/group.php?gid=2204894392) is 2204894392.

13.    On September 17, 2020, USFS Special Agent (SA) Mia T. PRINCE conducted a search of Facebook and determined the URL for ANDERSON'S Facebook page is "https://www.facebook.com/sinoda.bloodstone". The Facebook page for ANDERSON was listed under the name "Sinoda Bloodstone (Josh)". Accordingly, SA PRINCE observed the User ID is "sinoda.bloodstone".

14.    On September 17, 2020, SA PRINCE reviewed Facebook for Sinoda Bloodstone (Josh)" and was able to identify the profile picture for the page to be a picture of ANDERSON. SA PRINCE was also able to observed a photograph of one (1) 9MM SCCY/CPX-1 pistol, (1) magazine, (1) empty box of Bronze 9MM Luger ammunition, and (18) rounds of 9MM spelling out "Love" spread out on what appears to be a bedspread which was posted on ANDERSONS' Facebook page on August 14, 2020. The post captain read, "Just got this image in my head and had to make it come to life. The same photograph was posted a second time on August 28, 2020 stating Sinoda Bloodstone updated his cover

photo. SA PRINCE was able to identify the firearm as one of the guns located inside of

ANDERSON'S vehicle the day of his arrest on September 12, 2020.

 **Sinoda Bloodstone**
Aug 14 · 🌐                                    • • •

Just got this image in my head and had to make it
come to life.





**Sinoda Bloodstone** updated his cover photo.

Aug 28 · 🌐



15.     A Facebook Post, dated on August 14, 2020, told of ANDERSON seeing a

mountain lion in the area of Hughes Springs.  ANDERSON stated in the post "I shot at her

today to scare her off Twice" and "Next time I'm shooting to kill though". However, due to the security settings for the page, SA PRINCE was unable to observe the private or restricted portion of the Facebook Page.

---

 **Sinoda Bloodstone**
Aug 14 · 🌐

If you're in Hughes Springs, be safe. Myself and a couple neighbors have seen a mountain lion. Puma, cougar whatever you call it. Same animal. I shot at her today to scare her off. Twice. A neighbor saw it yesterday during the day. Something is wrong or it wouldn't be out and about in the day like this. Be safe. Next time I'm shooting to kill though. Just keep your eyes open.

 5                    8 Comments · 3 Shares

 Like          💬 Comment           Share

---

16.    On September 18, 2020, a request to preserve electronic records for the Facebook profiles aforementioned within this affidavit.  Facebook advised they took the reasonable steps to preserve the electronic records/account requested.  A case number 5301001 was issued for case # 20-08-9222375-E.

## TECHNOLOGICAL INFORMATION

17.     Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com.  Facebook allows its user to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

18.     Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter.  This information may include the user's full name, birth date, contact e-mail address, Facebook passwords, Facebook security questions and answers (for password retrieval), physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.  Facebook also assigns a user identification number to each account.

19.     Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network.  Facebook assigns a group identification number to each group.  A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request" for purposes of Facebook and can exchange communications or view information about each other.  Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

20.     Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts.  By adjusting

these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, to all Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

21.    Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times.  A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

22.    Facebook allows users to upload photos and videos.  It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video.  When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video.  For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

23.     Facebook users can exchange private messages on Facebook with other users.  These messages, which are similar to e-mail messages, are sent to the recipient's "Inbox" on Facebook, which also stores copies of messages sent by the recipient, as well as other information.  Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile.  In addition, Facebook has a Chat feature that allows users to send and receive instant messages through Facebook.  These chat communications are stored in the chat history for the account.  Facebook also has a Video Calling feature, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

24.     In addition to the applications described above, Facebook also provides its users with access to thousands of other applications on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

25.     If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

26.     Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages.  Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (i.e., non-Facebook) websites.  Facebook users can also become "fans" of particular Facebook pages.

27.     Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

28.     Each Facebook account has an activity log, which is a list of the user's posts

and other Facebook activities from the inception of the account to the present. The activity log includes stores and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

29.     Facebook notes is a blogging feature available to Facebook users, and it enables users to write and post notes or personal web logs ("blogs"), or to import their blogs from other services, such as Xanga, LiveJournal, and Blogger.

30.     The Facebook Gifts feature allows users to send virtual "gifts" to their friends that appear as icons on the recipient's profile page. Gifts cost money to purchase, and a personalized message can be attached to each gift. Facebook users can also send each other "pokes," which are free and simply result in a notification to the recipient that he or she has been "poked" by the sender.

31.     Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

32.     Some Facebook pages are affiliated with groups of users, rather than one individual user. Membership in the group is monitored and regulated by the administrator or head of the group, who can invite new members and reject or accept requests by users to enter. Facebook can identify all users who are currently registered to a particular group and can identify the administrator and/or creator of the group. Facebook also assigns a group identification number to each group. Facebook uses the term "Group Contact Info" to describe the contact information for the group's creator and/or administrator, as well as

a PDF of the current status of the group profile page.

33.   Facebook uses the term "Neoprint" to describe an expanded view of a given user profile. The "Neoprint" for a given user can include the following information from the user's profile: profile contact information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications.

34.   Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address. These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action. For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

35.   Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Facebook about issues relating to their account, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support

services, as well records of any actions taken by the provider or user as a result of the communications.

36.    Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

37.    I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

38.    Based on the forgoing, I request that the Court issue the proposed search warrant.

39.    This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

40.    Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

## REQUEST FOR SEALING

41.    It is further respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrants. I believe that sealing these documents is necessary because the warrant is relevant to an ongoing investigation into criminal investigation that is neither public nor known in its entirety to the target of the investigation.  Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

/s/ Mia T. Prince (telephonically)
MIA T. PRINCE
Special Agent
USDA Forest Service

Sworn to and subscribed before me on this 30th day of September, 2020.

HON. BARRY A. BRYANT
United States Magistrate Judge
Western District of Arkansas

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the following Facebook profiles with these user IDs:

- **Facebook User Name / Profile: Sinoda.Bloodstone (User ID: 108594634284871)**

Such information is stored at premises owned, maintained, controlled, or operated by Facebook Inc., a company headquartered in Menlo Park, California.

**Pursuant to the preclusion of notice provisions of 18 U.S.C. § 2705(b), Facebook, Inc. shall not disclose the existence of this search warrant or the search of the above-referenced Facebook user ID's to any person or entity, except that Facebook may disclose the attached warrant to an attorney for Facebook for the purpose of receiving legal advice, and Facebook shall disable or pre-empt any automatic notifications or similar processes relating to the above-captioned Facebook user ID's that may cause the existence of this search warrant and the search of the Facebook user ID's to be disclosed outside of Facebook, Inc.**

## ATTACHMENT B

### Particular Things to be Seized

**I.    Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook Inc. ("Facebook"), regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each user ID listed in Attachment A:

(a)   All contact and personal identifying information, including: full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers;

(b)   All activity logs for the account and all other documents showing the user's posts and other Facebook activities from January 1, 2020 through the present;

(c)   All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them from January 1, 2020 to the present, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos;

(d)     All profile information; News Feed information; status updates; videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e)     All records or other information regarding the devices and internet browsers associated with, or used in connection with, that user ID, including the hardware model, operating system version, unique device identifiers, mobile network information, and user agent string;

(f)     All other records and contents of communications and messages made or received by the user January 1, 2020, through the present, including all Messenger activity, private messages, chat history, video and voice calling history, and pending "Friend" requests;

(g)     All "check ins" and other location information;

(h)     All IP logs, including all records of the IP addresses that logged into the account;

(i)     All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(j)     All information about the Facebook pages that the account is or was a "fan" of;

(k)     All past and present lists of friends created by the account;

(l)     All records of Facebook searches performed by the account January 1, 2020 through the present;

(m)     All information about the user's access and use of Facebook Marketplace;

(n)     The types of service utilized by the user;

(o)     The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(p)     All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(q)     All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

Facebook is hereby ordered to disclose the above information to the government within 14 days of service of this warrant.

## II. Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of Title 18, United States Code, Section 9229(g), Possession of a Firearm by a Prohibited Person, involving the user ID identified in Attachment A, and, or, any other unknown person with knowledge and, or, involvement in the current pending case described above, including for each user ID and group ID identified on Attachment A, information pertaining to the following matters:

a) Evidence of any and all persons with knowledge and, or, involvement in the possession of a firearm by a convicted felon that occurred on September 12, 2020, in the Ouachita National Forest. This would include any and all information related to firearms and, or, ammunition, contained within the information associated with the subject profile from the dates of January 1, 2020, through the present;

b) Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

c) Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation; and

d) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may

include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the Forest Service may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by Facebook, and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of Facebook. The attached records consist of:

_____

**[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]**.

I further state that:

a.      all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Facebook, and they were made by Facebook as a regular practice; and

b.      such records were generated by Facebook's electronic process or system that produces an accurate result, to wit:

1.      the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Facebook in a manner to ensure that they are true duplicates of the original records; and

2.      the process or system is regularly verified by Facebook, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____          _____
DATE                             SIGNATURE